**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONAH CHUNG, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TYSON FOODS, INC., DONNIE SMITH, and DENNIS LEATHERBY,<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## CLASS ACTION COMPLAINT

Plaintiff Jonah Chung ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Tyson Foods, Inc. ("Tyson" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Tyson securities between November 23, 2015 and October 6, 2016, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Tyson, together with its subsidiaries, operates as a food company worldwide. It operates through four segments: Chicken, Beef, Pork, and Prepared Foods. Through its Chicken segment, Tyson raises and processes chickens into fresh, frozen, and value-added chicken products. The Company sells its products through its sales staff to grocery retailers, grocery wholesalers, meat distributors, warehouse club stores, military commissaries, industrial food processing companies, chain restaurants or their distributors, live markets, international export companies, and domestic distributors, as well as through independent brokers and trading companies.

3. Tyson was founded in 1935 and is headquartered in Springdale, Arkansas. Tyson's stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "TSN."

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Tyson systematically colluded with several of its industry peers to fix prices in the broiler-chicken market; (ii) the foregoing conduct constituted a violation of federal antitrust laws; (iii) consequently, Tyson's Chicken segment revenues during the class period were the result of illegal

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 3 of 19

conduct; and (iv) as a result of the foregoing, Tyson's public statements were materially false and misleading at all relevant times.

5. On September 2, 2016, the market had its first inkling of Defendants' fraud, when food distributor Maplevale Farms, Inc. ("Maplevale") filed an antitrust class action complaint in U.S. District Court for the Northern District of Illinois against Tyson and several other poultry producers, including Pilgrim's Pride Corporation, Perdue Farms, Inc., and Sanderson Farms, Inc., alleging that Tyson and the other companies named in the complaint had conspired since 2008 to manipulate the prices of broiler chickens—chickens raised specifically for meat production—by coordinating and limiting production and exchanging detailed information about prices, capacity, and sales volume, in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-7 (the "Sherman Act").[1]

6. Between September 7, 2016 and October 7, 2016, eight more class action complaints were filed against Tyson and other poultry companies in the Northern District of Illinois, on behalf of individual consumers and indirect purchasers of broiler chickens, all alleging that Tyson had engaged in the price-manipulation scheme described in Maplevale's complaint.

7. On October 7, 2016, Pivotal Research ("Pivotal") downgraded Tyson from "Hold" to "Sell." Explaining the downgrade, analyst Timothy Ramey directed investors' attention to the allegations of price manipulation by Tyson and its industry peers and described the Maplevale complaint as "powerfully convincing."

8. On news of the downgrade, Tyson's share price fell $6.63, or 8.91%, to close at $67.75 on October 7, 2016. From the filing of the Maplevale action on September 2, 2016 to Pivotal's downgrade on October 7, 2016, Tyson's share price fell $8.69, or 11.37%.

---

[1] *Maplevale Farms, Inc. v. Koch Foods, Inc. et al.*, 1:16-cv-08637 (N.D. Ill. Sept. 2, 2016).

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 4 of 19

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market price of the Company's common stock upon the materialization of the risk and/or disclosures as of October 7, 2016, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§10(b), 14(e) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b), 78n(e) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

12. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b). Tyson's stock trades on the NYSE, located within this Judicial District.

13. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14. Plaintiff, as set forth in the attached Certification, acquired Tyson securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15. Defendant Tyson is incorporated under the laws of Delaware. The Company's principal executive offices are located at 2200 Don Tyson Parkway, Springdale, Arkansas 72762. Tyson's common stock trades on the NYSE under the ticker symbol "TSN."

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 5 of 19

16. Defendant Donnie Smith ("Smith") has served at all relevant times as the Company's Chief Executive Officer and President.

17. Defendant Dennis Leatherby ("Leatherby") has served at all relevant times as the Company's Chief Financial Officer and Executive Vice President.

18. The Defendants referenced above in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. Tyson, together with its subsidiaries, operates as a food company worldwide. It operates through four segments: Chicken, Beef, Pork, and Prepared Foods. Through its Chicken segment, Tyson raises and processes chickens into fresh, frozen, and value-added chicken products. The Company sells its products through its sales staff to grocery retailers, grocery wholesalers, meat distributors, warehouse club stores, military commissaries, industrial food processing companies, chain restaurants or their distributors, live markets, international export companies, and domestic distributors, as well as through independent brokers and trading companies.

### Materially False and Misleading Statements Issued During the Class Period

20. The Class Period begins on November 23, 2015, when Tyson filed an Annual Report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended October 3, 2015 (the "2015 10-K"). For the quarter, Tyson reported net income of $258 million, or $0.63 per diluted share, on revenue of $10.51 billion, compared to net income of $137 million, or $0.37 per diluted share, on revenue of $10.11 billion for the same period in the prior year. For fiscal year 2015, Tyson reported net income of $1.22

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 6 of 19

billion, or $2.95 per diluted share, on revenue of $41.37 billion, compared to net income of $864 million, or $2.37 per diluted share, on revenue of $37.58 million for fiscal year 2014. For fiscal year 2015, Tyson reported $11.39 billion in sales for the Company's Chicken segment reporting unit.

21. In the 2015 10-K, Tyson stated, in part:

> **COMPETITION**
>
> Our food products compete with those of other food producers and processors and certain prepared food manufacturers. Additionally, our food products compete in markets around the world.
>
> We seek to achieve a leading market position for our products via our principal marketing and competitive strategy, which includes:
> - identifying target markets for value-added products;
> - concentrating production, sales and marketing efforts to appeal to and enhance demand from those markets; and
> - utilizing our national distribution systems and customer support services.
>
> Past efforts indicate customer demand can be increased and sustained through application of our marketing strategy, as supported by our distribution systems. The principal competitive elements are price, product safety and quality, brand identification, innovation, breadth and depth of product offerings, availability of products, customer service and credit terms.

22. The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

23. On February 5, 2016, Tyson filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the fiscal quarter ended January 2, 2016 (the "Q1 2016 10-Q"). For the quarter, Tyson reported net income of $461 million, or $1.15 per diluted share, on revenue of $9.15 billion, compared to net income of $309 million, or $0.74

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 7 of 19

per diluted share, on revenue of $10.82 billion for the same period in the prior year. For the quarter, Tyson reported $2.64 billion in sales for the Company's Chicken segment reporting unit.

24. The Q1 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

25. On May 9, 2016, Tyson filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the fiscal quarter ended April 2, 2016 (the "Q2 2016 10-Q"). For the quarter, Tyson reported net income of $432 million, or $1.10 per diluted share, on revenue of $9.17 billion, compared to net income of $310 million, or $0.75 per diluted share, on revenue of $9.98 billion for the same period in the prior year. For the quarter, Tyson reported $2.74 billion in sales for the Company's Chicken segment reporting unit.

26. The Q2 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27. On August 8, 2016, Tyson filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the fiscal quarter ended July 2, 2016 (the "Q3 2016 10-Q"). For the quarter, Tyson reported net income of $484 million, or $1.25 per diluted share, on revenue of $9.40 billion, compared to net income of $343 million, or $0.83 per diluted share, on revenue of $10.07 billion for the same period in the prior year. For the quarter, Tyson reported $2.74 billion in sales for the Company's Chicken segment reporting unit.

28. The Q3 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29. The statements referenced in ¶¶ 20-28 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Tyson systematically colluded with several of its industry peers to fix prices in the broiler-chicken market; (ii) the foregoing conduct constituted a violation of federal antitrust laws; (iii) consequently, Tyson's Chicken segment revenues during the class period were the result of illegal conduct; and (iv) as a result of the foregoing, Tyson's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

30. On September 2, 2016, the market had its first taste of the fraud when food distributor Maplevale Farms, Inc. ("Maplevale") filed an antitrust class action complaint in U.S. District Court for the Northern District of Illinois against Tyson and several other poultry producers, including Pilgrim's Pride Corporation, Perdue Farms, Inc., and Sanderson Farms, Inc., alleging that Tyson and the other companies named in the complaint had conspired since 2008 to manipulate the prices of broiler chickens—chickens raised specifically for meat production—by coordinating and limiting production and exchanging detailed information about prices, capacity, and sales volume, in violation of the Sherman Act.

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 9 of 19

31. Between September 7, 2016 and October 7, 2016, eight more class action complaints were filed against Tyson and other poultry companies in the Northern District of Illinois, on behalf of individual consumers and indirect purchasers of broiler chickens, all alleging that Tyson had engaged in the price-manipulation scheme described in Maplevale's complaint.

32. On October 7, 2016, Pivotal downgraded Tyson from "Hold" to "Sell." Explaining the downgrade, Pivotal analyst Timothy Ramey directed investors' attention to the allegations of price manipulation by Tyson and its industry peers and described the Maplevale complaint as "powerfully convincing."

33. On news of the downgrade, Tyson's share price fell $6.63, or 8.91%, to close at $67.75 on October 7, 2016. From the filing of the Maplevale action on September 2, 2016 to Pivotal's downgrade on October 7, 2016, Tyson's share price fell $8.69, or 11.37%.

34. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock upon the materialization of the risk and/or disclosures as of October 7, 2016, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tyson securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tyson securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tyson or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tyson;

- whether the Individual Defendants caused Tyson to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 11 of 19

- whether the prices of Tyson securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Tyson securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Tyson securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Tyson securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Tyson securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Tyson securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Tyson's finances and business prospects.

48. By virtue of their positions at Tyson, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Tyson securities from their personal portfolios.

50. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Tyson, the Individual Defendants had knowledge of the details of Tyson's internal affairs.

51. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Tyson. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Tyson's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Tyson securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Tyson's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Tyson securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

52. During the Class Period, Tyson securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Tyson securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Tyson securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Tyson securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public and the materialization of the risk of the downgrade.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56. During the Class Period, the Individual Defendants participated in the operation and management of Tyson, and conducted and participated, directly and indirectly, in the conduct of Tyson's business affairs. Because of their senior positions, they knew the adverse non-public information about Tyson's misstatement of income and expenses and false financial statements.

57. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Tyson's financial condition and results of operations, and to correct promptly any public statements issued by Tyson which had become materially false or misleading.

58. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Tyson disseminated in the marketplace during the Class Period concerning

Tyson's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Tyson to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Tyson within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Tyson securities.

59. Each of the Individual Defendants, therefore, acted as a controlling person of Tyson. By reason of their senior management positions and/or being directors of Tyson, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Tyson to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Tyson and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Tyson.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 17 of 19

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: October 17, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ J. Alexander Hood II*
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com
mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
1999 Avenue of the Stars
Los Angeles, California 90067
Suite 1100
Telephone: 1-800-977-7401
Fax: 1-800-536-0065
Email: michael@goldberglawpc.com
brian@goldberglawpc.com

***Attorneys for Plaintiff***

# Plaintiff's Certification

I, Jonah Chung, certify that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff’s transactions in the security that is the subject of the complaint during the class period specified in the complaint are as follows:

(redacted) [redacted]

5. Plaintiff has not sought to serve, or served, as a representative party on behalf of a class under this title during the 3-year period preceding the date on which this certification is signed, except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 10/11/2016



(redacted) [redacted]

Case 1:16-cv-08108-WHP Document 1 Filed 10/17/16 Page 19 of 19

**TYSON FOODS, INC (TSN)** **Chung, Jonah**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|---|---|---|---|
| 9/2/2016 | Purchase | 46 | $76.7896 |